| | |
|---|---|
| JAMES SINGH, | No. C 03-05246 SI |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING FOR LACK OF JURISDICTION** |
| v. | |
| CITY OF OAKLAND, | |
| Defendant. | |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Defendant City of Oakland has filed a motion for summary judgment. This matter is currently set for hearing on November 20, 2009. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court GRANTS in part defendant's motion for summary judgment and DISMISSES the action for lack of subject-matter jurisdiction.

**BACKGROUND**

Plaintiff James Singh owns a piece of commercial property located at 3611 Loma Vista Avenue in Oakland, California, on which is sited an automobile repair shop bearing the address 3636 MacArthur Boulevard. Singh Depo., Def. Ex. A(1), at 9:16-10:10. Starting in approximately 1996, plaintiff began to have disputes with the City of Oakland regarding possible municipal violations at his business. *Id.* at 57:10. Plaintiff was accused of conducting auto repair work on the public street, failing to adequately screen his repair business from public view, and maintaining an abandoned driveway on the MacArthur Boulevard side of his property. *Id.* at 57:5-7; *see also* Def. Ex. A(2).

The Oakland Municipal Code in force at the time of these disputes allowed the City to assess

fees against a property owner for the inspection and abatement of nuisances on his or her property. *See* OMC § 8.24.060, ex. 1 to Def. RJN.[1] The Code provided that such fees "may be recovered by all appropriate legal means including, but not limited to, priority lien and special assessment of the general tax levy and civil and small claims court action brought by the City." *Id.* §§ 15.08.130, 8.24.080. The Code set forth the following procedures for providing notice to the property owner:

> Prior to recordation of a priority lien and special assessment, the Building Official shall provide the property owner an itemized list of the fees, costs, penalties and interest accruing to said lien, with a demand for payment thereof. Said demand shall indicate that failure to pay expeditiously will result in the recordation of a priority lien and special tax assessment against the property. . . .

*Id.* § 15.08.130. If the property owner failed to pay the fees following this notice, the City was authorized to record the lien. *Id.* The City could transfer the lien to the Office of the Alameda County Tax Collector. After transfer, the County Tax Collector could subject the property to the same penalties as for failure to pay any other property tax, including selling the property at a foreclosure sale. *Id.*

The City sent plaintiff three different types of notices related to the alleged nuisances on his property. The first type, a Notice of Violation, informs a property owner that there is a nuisance present on his property and that he must pay certain fines and fees for inspection and abatement of the nuisance. *See* Def. Ex. A(2). The second type of notice, an Invoice, consists of an itemization of the amounts charged for nuisance inspection and abatement. *See* Def. Ex. B(1). After plaintiff failed to pay the charges itemized in the invoice, he was sent the third type of notice, the Lien Notice, which informs a property owner of the recordation of a lien against his land. *See* Def. Ex. B(2).

After plaintiff received multiple Notices of Violation identifying the three violations mentioned above (conducting repair work on a public street, failing to screen, and maintaining an abandoned driveway), and failed to pay the charges stated in the associated Invoices, multiple liens were recorded against his property. This process of sending multiple installments of the three-part series of notices began in approximately 1996 and ended in 2002 or 2003. *See* Def. Ex. A(2), A(3), B(1), B(2). One such series of notices commenced with a Notice of Violation sent on July 5, 2001. The Notice identified the alleged nuisances on plaintiff's property and stated, "Assessments which are not paid within 7 days

---

[1] The Court grants defendant's request to take judicial notice of Chapters 8 and 15 of the Oakland Municipal Code in effect from 1997 to 2003, pursuant to Federal Rule of Evidence 201.

after invoicing will be liened against your property ($1,084 minimum administrative fee) and collected with your property taxes or through Court action." July 5, 2001 Notice of Violation, Def. Ex. A(2). An Invoice sent thereafter on October 31, 2001 listed a charge of $138 to "Prepare Scheduled Reinspection" and $242 for "Fee Charge Reinspection." Oct. 31, 2001 Invoice, Def. Ex. B(1), p.16. The Invoice further stated, "If this invoice is not paid by the PAYMENT DUE DATE, the City of Oakland will record a Priority Lien against the described property for the TOTAL AMOUNT DUE plus lien preparation, recording and release fees plus interest." *Id.* Finally, plaintiff was sent a Lien Notice on December 31, 2001 which stated,

> The City of Oakland has recorded a Priority Lien against the described property for the TOTAL AMOUNT DUE for this invoice and for other invoices previously sent to you for abatement services. In order to release the lien from the property, full payment must be received for all invoices associated with the lien, plus interest at 10% annual percentage rate. . . . Failure to pay the lien in full will result in the cost being added as a Special Assessment to your general property tax bill. Failure to pay or delinquency in paying the tax bill can result in foreclosure and sale of the property.

Dec. 31, 2001 Lien Notice, Def. Ex. B(2), p. 37.[2]

---

[2] This action was filed in November, 2003, and the one-year statute of limitations had expired on all of the notices provided or discussed by the parties in connection with this motion. The notices discussed above are described for illustrative purposes only.

The Ninth Circuit reversed this Court's dismissal of plaintiff's procedural due process claim based on *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991), in which the Supreme Court held that "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." The Ninth Circuit held that plaintiff stated a claim under this rule because his complaint alleged that he had "*no* opportunity to contest the propriety of the lien at a hearing at *any* time before the attempted sale." *Singh*, 2008 WL 4071838, at **2. The court further held that plaintiff had submitted evidence indicating "that at least one lien and one assessment for Oakland city code enforcement may have been recorded" against his property during the statutory period, which began on November 24, 2002. *Id.* at **3.

The evidence in the record is less than clear with regard to whether any liens were recorded against plaintiff's property within the statutory period. The evidence submitted by the parties in connection with the present motion reveals no notices mailed or liens recorded on or after November 24, 2002. One set of records submitted by plaintiff reflects that the latest lien was recorded in July 2002. *See* Complaint Fee Payment History, ex. 1-C to Lusk Decl, at 1. Plaintiff has also submitted a Demand for Payment letter sent to him by the City after he requested in 2004 that the City prepare an accounting reflecting all outstanding liens. This letter lists the latest lien as having been recorded in October 2002, still one month before the statutory period began. *See* Oct. 19, 2004 Demand for Payment, Group Ex. 1 to Vlazakis Decl., at 2. The only evidence showing that liens may have been recorded within the statutory period consists of records from the Alameda County Recorder's Office that were attached to plaintiff's opposition to the City's motion to dismiss, filed in February 2005. These records show that liens were noticed in March 2003 by the City of Oakland against a "James Singh." OPR Index Search, ex. to Lusk Decl. in Supp. to James Singh (Docket No. 55). Numerous James Singhs are listed in the records, with lien dates stretching back well beyond the time period at issue in this case, and it is unclear whether the "James Singh" referred to in connection with the March 2003 liens is plaintiff or someone

All of the notices described were mailed to plaintiff at 21 Pembroke Court in Alameda, California. Although plaintiff did not reside at the 21 Pembroke Court address for the entirety of the period between 1998 and the initiation of this lawsuit in 2003, he admits he continued to receive mail there. Singh Depo. at 12:4-14:13; *see also* Pltf. Oppo. at 4 & n.2. Plaintiff testified at his deposition that he could not recall receiving each specific notice shown to him by defense counsel, but acknowledged that he had received documents containing "similar charges" from the City beginning in 1998, and described being "harassed" by the City via multiple nuisance notices. Singh Depo. at 33:13-15, 57:21-58:5, 67:4-68:7.

Plaintiff received notice in early March 2004 that the County had scheduled a foreclosure sale of his property for March 15, 2004, due to failure to pay the lien amounts due. Singh Decl. ¶ 9. Plaintiff obtained two successive one-year postponements of the foreclosure sale, which was ultimately set for April 2006. *Id.* ¶¶ 13-15. Meanwhile, in March 2005, plaintiff brought suit against the City of Oakland and the County of Alameda in state court, seeking an injunction preventing the sale on the ground the assessment of abatement costs was unjustified, and the recording of liens and setting of a foreclosure sale on account of nonpayment was unlawful due to lack of notice. *See* State Court Complaint, Def. Ex. C(1). The trial court sustained the City's demurrer to plaintiff's claims and dismissed the suit, holding that under California law, plaintiff was required to first pay the contested charges and then file an action to recover the amount paid. *See* Oct. 13, 2005 Order, Def. Ex. C(2), at 2-4. In April 2006, while plaintiff's appeal to the California Court of Appeal was pending, plaintiff paid $22,646.45 to the Alameda County Tax Collector's Office to redeem his property.[3] Singh Decl. ¶ 15; Cashier's Check, ex. H-1 to Singh Decl. In November 2006, the Court of Appeal affirmed the trial court's dismissal of plaintiff's claims on the ground he had not presented any evidence to the trial court that he paid the

---

else with the same name.
    For the reasons set out later in this order, this Court lacks jurisdiction to proceed further in this matter. Hence, it is not necessary to resolve the remaining issue concerning identity and timing of the March 2003 "James Singh" liens. It is noted, however, that in this motion plaintiff did not present or argue any support for the proposition that the March 2003 liens were his.

[3] Plaintiff also sent a second check in the amount of $10,245.77 for a lot on Colton Boulevard in Oakland, a property that is not at issue in these proceedings.

4

charges due prior to initiating suit. *See* Nov. 17, 2006 Order, ex. 2 to Def. RJN.[4]

Previously, in November 2003, plaintiff initiated the present action in this district against the City of Oakland and several of its employees, alleging violations of 42 U.S.C. §§ 1983 and 1985. After this Court dismissed all of the claims in plaintiff's Second Amended Complaint with the exception of a cause of action alleging race discrimination, plaintiff voluntarily dismissed the lawsuit with prejudice to enable him to appeal three prior interlocutory orders of this Court.[5] On appeal, the Ninth Circuit affirmed this Court's dismissal of plaintiff's claims, except with respect to plaintiff's claim for procedural due process violations and declaratory relief related thereto. *Singh v. City of Oakland*, No. 06-17190, 2008 WL 4071838, at **2-3 (9th Cir. Sept. 3, 2008).

On the City's motion, this Court issued an order clarifying that the sole issues remaining on remand are "plaintiff's Third Cause of Action, alleging a procedural due process violation in the City's recording of liens against plaintiff's property and subsequent attempt to sell his property to satisfy the liens, and plaintiff's Sixth Cause of Action, seeking declaratory relief as to this due process claim." Oct. 7, 2009 Order, at *3 (Docket No. 181). As these claims were stated against the City of Oakland only, the City is the sole defendant at this juncture. Presently before the Court is the City's motion for summary judgment.

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof

---

[4] The Court grants defendant's request for judicial notice of the Court of Appeal's decision.

[5] The Court's October 23, 2006 Supplemental Order of Dismissal Upon Settlement stated: "The Court hereby ORDERS that this matter be DISMISSED WITH PREJUDICE, subject to the condition that plaintiff James Singh may appeal any prior interlocutory order entered by the Court in this matter." Oct. 23, 2006 Order (Docket No. 146).

5

at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

At the summary judgment stage, the evidence is viewed in the light most favorable to the non-moving party. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Plaintiff's claims on remand concern the recording of liens and attempt to carry out a foreclosure sale of his property, all allegedly without notice or a hearing. The Court will first address the portion of the claim based on the foreclosure sale. In its motion for summary judgment, the City asserts that it is not the proper defendant with respect to this claim because once it had transferred the liens on plaintiff's property to the Alameda County Tax Collector, it was no longer responsible for overseeing any future proceedings with respect to the property, including the setting of a foreclosure sale. The City's contention is borne out by the evidence. The Notice of Sale mailed to plaintiff in March 2004 was sent by the Alameda County Tax Collector's Office. *See* Notice of Sale, ex. 4 to Vlazakis Decl. An employee of the City testified at her deposition that there was no coordination between the City and the County in arranging tax sales of properties. Cordova Depo., Group Ex. 2 to Vlazakis Decl., at 37:15-19. In his declaration, plaintiff himself states that the foreclosure sale notices were sent by the County, and that the cashier's check redeeming his property was sent to "Donald R. White of the

Alameda County Tax Collector's Office." Singh Decl. ¶¶ 9, 15; *see also* Cashier's Check, ex. H-1 to Singh Decl. Accordingly, plaintiff cannot maintain a claim against the City based on the setting of the foreclosure sale. The sole remaining portion of his due process claim pertains to the recording of liens.

The Court must consider at the outset whether it has jurisdiction to entertain plaintiff's challenge to the recording of liens against his property. Under the Tax Injunction Act ("Act"), 28 U.S.C. § 1341, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[6] Where state court remedies "adequately protect the federal rights asserted," such as the right to due process of law, federal courts may not consider actions for declaratory relief or Section 1983 actions for damages that challenge a state or municipal taxation scheme. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 107-09 (1981); *see also Patel v. City of San Bernardino*, 310 F.3d 1138, 1140 (9th Cir. 2002) (under the Act, "taxpayers are barred from asserting § 1983 actions against the validity of state tax systems in federal courts as long as they had an adequate remedy available in state court") (internal quotation marks and citation omitted). Accordingly, the Court must decide whether state law provided plaintiff an adequate means of challenging the imposition of liens on his property.[7]

Article XIII of the California Constitution provides that a taxpayer seeking to challenge a state tax must first pay the tax, then seek a refund of the disputed amount. Cal. Const. art. XIII, § 32 ("No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by

---

[6] The Court rejects plaintiff's contention that the Court must disregard the City's reliance on the Tax Injunction Act because the City failed to plead related affirmative defenses in its answer. "[A]bsent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984). Plaintiff has made no showing of prejudice. Moreover, the application of the Act is a question of subject matter jurisdiction that must be raised sua sponte by the Court, regardless of when or whether it was raised by the City. *Ins. Corp. of Ir., Ltd. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("[A] party does not waive the requirement [of subject-matter jurisdiction] by failing to challenge jurisdiction early in the proceedings. Similarly, a court . . . will raise lack of subject-matter jurisdiction on its own motion.").

[7] The Act applies to actions challenging the imposition of liens against a property, as such liens comprise part of the process of tax collection. *Hibbs v. Winn*, 542 U.S. 88, 102 (2004).

the Legislature."). Section 4807 of the California Revenue and Taxation Code applies this provision to property taxes. *See* Cal. Rev. & Tax. Code §§ 4807, 4808. California courts have termed the principle the "pay first, litigate later" rule, and have held that the rule applies to local as well as state-imposed taxes. *Flying Dutchman Park, Inc. v. City and County of San Francisco*, 113 Cal. Rptr. 2d 690, 692, 696-97 (Cal. Ct. App. 2001). In bringing an action for a post-payment refund, the taxpayer may assert constitutional challenges to the state or local tax and its administration. Cal. Rev. & Tax. Code § 4808; *Writers Guild of Am., W., Inc. v. City of Los Angeles*, 91 Cal. Rptr. 2d 603, 606 (Cal. Ct. App. 2000).[8]

After plaintiff brought suit in the Alameda County Superior Court in 2005, the court dismissed the complaint on the ground plaintiff had failed to allege facts showing his compliance with the pay first, litigate later rule. Oct. 13, 2005 Order at 2-4. The California Court of Appeal affirmed the trial court's ruling, rejecting plaintiff's various arguments as to why the rule should not apply in his case. The court explained that, under both state and federal law, California's statutory refund procedure constitutes "a plain, speedy and efficient remedy barring equitable relief." Nov. 17, 2006 Order at 6. The Court of Appeal expressly stated, however, that plaintiff was free to file a new action alleging facts showing compliance with the pay now, litigate later rule: "Nothing in our decision prevents appellant from filing a new action properly alleging the payment of the taxes in issue, and seeking a refund of the taxes paid." *Id.* at 8. Indeed, although plaintiff previously failed to comply with the statutory prerequisites for filing a claim in state court, he has presented evidence showing that he has since paid off the amount due on his property. *See* Singh Decl. ¶ 15; Cashier's Check, ex. H-1 to Singh Decl. Plaintiff may therefore be able to file a new action for a refund in state court.

The Court concludes that California law provides plaintiff with a plain, speedy, and efficient

---

[8] Plaintiff claims that he is entitled to an exception to the pay first, litigate later rule, as set forth in *Stenocord Corp. v. City and County of San Francisco*, 471 P.2d 966 (Cal. 1970). In *Stenocord*, the California Supreme Court held that a party may be exempted from the usual rule where "the assessment is a nullity as a matter of law because, for example, the property is tax exempt, non-existent or outside the jurisdiction, and no factual questions exist regarding the valuation of the property which, upon review by the board of equalization, might be resolved in the taxpayer's favor, thereby making further litigation unnecessary." *Id.* at 968. The California Court of Appeal considered and rejected this precise claim in reviewing the trial court's dismissal of plaintiff's action. That determination bars plaintiff from reasserting the issue in this proceeding. *See Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005).

remedy for challenging the liens recorded against his property. As discussed above, California's statutory refund procedure allows for a hearing at which the taxpayer plaintiff may seek a refund of his payment and may assert constitutional challenges to the tax. *See* Cal. Rev. & Tax. Code § 4808; *Writers Guild*, 91 Cal. Rptr. at 606. The fact that the plaintiff's rights may be vindicated only after payment is already made does not mean that the state procedures are insufficient to protect due process rights. *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514 (1981) (holding that an Illinois post-payment refund procedure similar in relevant respects to California's procedure constitutes "a plain, speedy and efficient remedy" within the meaning of the Tax Injunction Act, thereby divesting federal courts of jurisdiction to entertain tax-related claims, because the state procedure "provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax").

The Court finds that it lacks jurisdiction to consider plaintiff's federal constitutional challenge to the imposition of the liens. This action is hereby DISMISSED for lack of federal jurisdiction.

<u>Plaintiff's Request for Judicial Notice</u>: The Court grants plaintiff's request for judicial notice of sections of the Oakland Municipal Code, sections of the California Government Code, prior pleadings, and portions of plaintiff's brief on appeal to the Ninth Circuit.

<u>Evidentiary Objections</u>: Plaintiff filed a set of objections to the evidence submitted in support of the City's summary judgment motion. Plaintiff objects to portions of the declarations of Diana Rex, Ray Derania, and Christopher Kee, and to Defense Exhibits C(1) and C(3). None of this evidence was material to the Court's resolution of the City's summary judgment motion, and plaintiff's objection is therefore denied. Plaintiff further objects to Defense Exhibits A(2) and A(3), which consist of various notices mailed to plaintiff, on the ground that they are not properly authenticated. The notices are attached to the declaration of Jennifer Logue, one of defendant's attorneys. Plaintiff objects that Ms. Logue lacks personal knowledge that the notices were mailed to plaintiff. The notice in Defense Exhibit A(2) was "authenticated by [plaintiff's] own reliance on the evidence in [his] moving papers." *Hayes v. Clark County*, No. 06-16940, 2008 WL 3992529, at *1 n.1 (9th Cir. Aug. 22, 2008). The notices contained in Defense Exhibit A(3) were also submitted as part of Defense Exhibit B(2), to which

plaintiff does not object. Accordingly, the Court finds that the evidence is appropriate for consideration in ruling on the City's summary judgment motion.

## CONCLUSION

For the foregoing reasons, and for good cause shown, defendant's motion for summary judgment is GRANTED in part and this action is DISMISSED for lack of federal jurisdiction. (Docket No. 187).

**IT IS SO ORDERED.**

Dated: November 18, 2009

SUSAN ILLSTON
United States District Judge